IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SYLVAN LEARNING, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO.  1:10-CV-450-WKW [WO] |
| ) | |
| GULF COAST EDUCATION, INC., ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION AND ORDER**

### I.  INTRODUCTION

Before the court is Sylvan Learning's ("Sylvan") motion for preliminary injunction against Defendants, Gulf Coast Education ("GCE") and Joseph J. Jezewski Jr.  (Doc. # 3.) This trademark infringement action arises out of a franchise agreement between Sylvan and Defendants for the operation of a Sylvan Learning Center in Dothan, Alabama.  (Doc. # 1 ¶¶ 8-9.) Sylvan terminated Defendants' franchise on January 15, 2010, because the Licensee, Mr. Jezewski, failed to attend at least two mandatory national conferences in any three consecutive calendar year periods pursuant to paragraph 10.3.10 of the License Agreement. (Prelim. Inj. Hr'g, Ex. 1 ¶ 10.3.10; Prelim. Inj. Hr'g, Aug. 4, 2010.)  Sylvan brought suit seeking a preliminary injunction, permanent injunction and monetary damages for Defendants' alleged unfair competition and violation of Sylvan's trademarks, the License Agreement's non-compete clause, the License Agreement's post-termination obligations, and the Alabama Trade Secrets Act.

At a hearing on the motion for preliminary injunction on August 4, 2010, the court enjoined Defendants, on paragraphs 1 and 3(a)-(e) of Sylvan's motion for preliminary injunction. (Doc. # 3 ¶¶ 1, 3(a)-(e); Prelim. Inj. Hr'g.) At the same hearing, the court instructed the parties to brief the proper source of law for evaluating the non-compete clause of the License Agreement (Prelim. Inj. Hr'g, Ex. 1), and the application of that law to this case. (Doc. # 18.) Accordingly, Defendants submitted a brief in opposition to Sylvan's motion for preliminary injunction (Doc. # 20), and Sylvan submitted a response. (Doc. # 21.) For the following reasons, Sylvan's motion for preliminary injunction on the non-compete clause of the License Agreement (Doc. # 3 ¶ 2) is due to be granted and Defendants are directed to submit a written report regarding compliance with this order. (Doc. # 3 ¶ 4.)

## II.  JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction). Personal jurisdiction and venue are adequately pleaded and not contested.

## III.  STANDARD OF REVIEW

The decision to grant or deny a preliminary injunction "is within the sound discretion of the district court." *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002). To prevail on a motion for a preliminary injunction, the plaintiff bears the burden of demonstrating that

> (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.

*Am. Civil Liberties Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)).  "'A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites.'"  *Id.* (quoting *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc*., 887 F.2d 1535, 1537 (11th Cir. 1989)).

## IV.  DISCUSSION

**A.     Substantial Likelihood of Success on the Merits**

At issue is the source of law controlling the non-compete clause in the License Agreement, and the enforceability of that non-compete clause under appropriate state law.[1]  The non-compete clause in question states:

> In the event this Agreement is terminated . . . Licensee covenants, for a period of two (2) years after such termination . . . not to engage as an owner, operator, or in any managerial capacity, in any educational business offering individualized diagnostic tests or academic or prescriptive educational programs which are designed to be personally taught, supervised or administered by trained instructors, at or within a twenty (20) mile radius of any Sylvan System center in operation on the Effective Date hereof other than as an authorized licensee of another Sylvan unit.

(Prelim. Inj. Hr'g, Ex. 1 ¶ 11.5.2.)  In addition, the License Agreement includes a choice-of-law provision specifying Maryland as the governing jurisdiction.  (Prelim. Inj. Hr'g, Ex. 1

---

[1] The License Agreement was entered into evidence by stipulation of the parties.  (Prelim. Inj. Hr'g, Ex. 1.)  The court also notes that counsel for Defendants conceded that "regardless of whether the laws of the State of Maryland or the laws of the state of Alabama are followed by this Court, non-compete agreements are enforceable in both jurisdictions."  (Doc. # 20, at 3.)

¶ 19.)  As discussed below, Alabama recognizes the right of parties to contract for a particular state's laws to govern an agreement.  Accordingly, based upon an interpretation of the non-compete clause under Maryland law, as called for in the License Agreement, the non-compete clause is enforceable.

### *1.     Choice of Law in Contracts under Alabama Law*

The interpretation and enforcement of a non-compete clause in a contract is controlled by state law.  *See In re Southeast Banking Corp.*, 156 F.3d 1114, 1121 (11th Cir. 1998).  "When a federal court decides a state law claim, whether acting pursuant to diversity or supplemental jurisdiction, it applies the choice-of-law rules of the jurisdiction in which its sits."  *Benchmark Med. Holdings, Inc. v. Rehab Solutions, LLC*, 307 F. Supp. 2d 1249, 1258-59 (M.D. Ala. 2004).  Alabama's choice-of-law doctrine provides that "a contract is governed by the laws of the state where it is made except where the parties have legally contracted with reference to the laws of another jurisdiction."  *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991).  Where the parties have contracted with reference to the laws of another jurisdiction, Alabama requires that the other state's law in the contract not be "contrary to the fundamental public policies of the forum state" in order for the parties' choice of law to be given effect.  *Id.*  In order to resolve the choice-of-law issue, the court must examine Alabama public policy concerning non-compete agreements to determine if Maryland law applies.

### a.     Alabama Public Policy on Non-Compete Clauses

Under Alabama Code § 8-1-1-1(a), most agreements restraining employment are void. The statutory exception to this policy, however, dictates that

> one who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city or part thereof so long as the . . . employer carries on a like business therein.

Ala. Code § 8-1-1-1(b).  Alabama courts have found that a non-compete agreement is enforceable pursuant to the public policy exception in § 8-1-1(b) if: "(1) the employer has a protectable interest; (2) the restriction is reasonably related to that interest; (3) the restriction is reasonable in time and place; [and] (4) the restriction imposes no undue hardship." *Roberson v. C.P. Allen Constr. Co., Inc.*, No. CV-05-1126, 2010 WL 1837772 at *2-3 (Ala. Civ. App. 2010) (citing *DeVoe v. Cheatham*, 413 So. 2d 1141, 1142 (Ala. 1982)).

### b.     Maryland Law on Non-Compete Clauses

"In Maryland, covenants not to compete may be applied and enforced generally 'only against those employees who provide unique services, or to prevent the future misuse of trade secrets, routes or lists of clients or solicitation of customers.'" *Ecology Servs., Inc. v. Clym Envtl. Servs., LLC*, 181 Md. App. 1, 14 (Md. Ct. Spec. App. 2008) (citing *Becker v. Bailey*, 299 A.2d 835, 838 (Md. 1973)).  In applying that rule, the Maryland courts have found that "[p]ersons in business have a protectable interest in preventing an employee from using the contacts established during employment to pirate the employer's customers." *Holloway v.*

*Faw, Casson & Co.*, 572 A.2d 510, 515 (Md. 1990). This protection between employers and employees extends to agreements between the licensor and licensee of a franchise. *See Budget Rent A Car, Inc. v. Raab*, 302 A.2d 11, 13-14 (Md. 1973). The general rule is that covenants not to compete "will be sustained 'if the restraint is confined within limits which are no wider as to area and duration than are reasonably necessary for the protection of the business of the employer and do not impose undue hardship on the employee or disregard the interests of the public.'" *Holloway*, 572 A.2d at 515 (citing *Ruhl v. F.A. Bartlett Tree Expert Co.*, 225 A.2d 288, 291 (Md. 1967)).

### c.     Maryland Non-Compete Law Mirrors Alabama's Law

Maryland law concerning non-compete agreements is analogous to Alabama law. Alabama's time and place, and undue hardship standards, elements (3) and (4) of the standard, mirror Maryland law, which states: "[T]he restraint is confined within limits which are no wider as to area and duration than are reasonably necessary" and "do not impose undue hardship on the employee or disregard the interests of the public." *Holloway*, 572 A.2d at 515. Alabama's requirements that "the employer have a protectable interest; [and] the restriction is reasonably related to that interest," elements (1) and (2), are analogous to Maryland's requirement that the restriction be "reasonably necessary for the protection of the business of the employer."[2] *Id.*

---

[2] Alabama courts recognize that an employer has a "legitimate interest in restraining the employee from appropriating valuable trade information and customer relationships." *DeVoe*, 413 So. 2d at 1142. Similarly, Maryland courts have found that "[p]ersons in business have a protectable interest in preventing an employee from using the contacts established during employment to pirate the employer's customers." *Holloway*, 572 A.2d at 515 (holding that an accounting firm has a legitimate and protectable

In sum, Maryland's law on non-compete clauses is not in conflict with Alabama's public policy concerning non-compete agreements. Therefore, the License Agreement's Maryland choice of law provision is valid, and the court shall interpret the non-compete agreement under Maryland law. (Prelim. Inj. Hr'g, Ex. 1 ¶ 19.)

### 2. *Enforceability of the Non-Compete Agreement under Maryland Law*

The general rule in Maryland is that covenants not to compete "will be sustained if the restraint is confined within limits which are no wider as to area and duration than are reasonably necessary for the protection of the business of the employer and do not impose undue hardship on the employee or disregard the interests of the public." *Holloway*, 572 A.2d at 515 (citation omitted).

#### a. **Reasonable as to Duration and Area**

The court must first determine if the scope of the non-compete is facially reasonable as to duration and area. *See Ecology Servs.*, 181 Md. Ct. Spec. App. at 14-15. Defendants conceded that "based on Alabama law, the length and geographical area of the restriction is reasonable." (Doc. # 20, at 6.) The court reaches the same conclusion applying Maryland law.

Maryland courts have found a time restriction of two or more years to be reasonable as to an accountant, a summer camp counselor, a former employee serving customers of a division of a computer company, a former employee soliciting customers of an insurance

---

interest in the ongoing business relationship it has established with its clients).

agency, and even for an area manager of a tree care company. *See Holloway*, 572 A.2d at 523-24; *Millward v. Gerstung Int'l Sports Educ., Inc.*, 302 A.2d 14, 16-17 (Md. 1973); *Gill v. Computer Equip. Corp.*, 292 A.2d 54, 59 (Md. 1972); *Tuttle v. Riggs-Warfield-Roloson, Inc.*, 246 A.2d 588, 590-91 (Md. 1968); *Ruhl v. F.A. Bartlett Tree Expert Co.*, 225 A.2d 288, 294 (Md. 1967). When comparing the facts of this case to Maryland precedent, the two-year restriction is reasonable.

The non-compete clause's twenty-mile area restriction is also facially reasonable. In *Millward*, the court found a citywide and surrounding counties area restriction against a former camp counselor to be reasonable on its face, noting that Mr. Millward did not provide evidence that it was unreasonable. 302 A.2d at 14, 17. In *Ruhl*, the court sustained an area restriction of five Eastern Shore counties and a contiguous county in Delaware against a former area manager for a tree trimming company. 225 A.2d at 289, 293. The court emphasized the need for such a wide restriction because an employer has a stronger need for protection against diversion of his business to the former employee who has had personal contacts with customers which the employer lacks. *Id.* at 291-92. Accordingly, the duration and area elements of the non-compete agreement are reasonable.

### b.     Protection of the Business of the Employer

When a covenant not to compete is reasonable on its face as to both time and area, the factors for determining the enforceability of the covenant based upon the facts and circumstances of the case are:

[1] whether the person sought to be enjoined is an unskilled worker whose

> services are not unique; [2] whether the covenant is necessary to prevent the solicitation of customers or the use of trade secrets, assigned routes, or private customer lists; [3] whether there is any exploitation of personal contacts between the employee and customer; and, [4] whether enforcement of the clause would impose an undue hardship on the employee or disregard the interests of the public.

*Ecology Servs.*, 171 Md. Ct. Spec. App. at 15. "In Maryland, covenants not to compete may be applied and enforced generally 'only against those employees who provide unique services, or to prevent the future misuse of trade secrets, routes or lists of clients or solicitation of customers.'" *Id.* at 14 (citation omitted). To separate justifiable restraints from non-justifiable restraints, the Maryland Court of Appeals[3] has repeatedly drawn the following distinction:

> There is a line of cases which holds that restraint is justified if a part of the compensated services of the former employee consisted in the creation of the good will of customers and clients which is likely to follow the person of the former employee. And there is another line of cases which holds that restraint is not justified if the harm caused by service to another consists merely in the fact that the former employee becomes a more efficient competitor just as the former employer did through having a competent and efficient employee.

*Holloway*, 572 A.2d at 515 (quoting *Silver v. Goldberger*, 188 A.2d 155, 158 (Md. 1963)). This case is squarely within the line of Maryland cases holding that a restraint is justified to protect a former employer's goodwill and clients. Maryland courts have been particularly wary of situations where a former employee or agent was in a position to establish a personal relationship with clients because of the future effect that prior affiliation would have on those former clients. *Millward*, 302 A.2d at 17. Those concerns apply here because of the threat

---

[3] The Maryland Court of Appeals is Maryland's highest court.

to the Sylvan franchise network posed by Defendants' operation of an independent learning center built upon the Sylvan method and Sylvan's goodwill, while continuing to service Sylvan's former clients.

The facts of this case are similar to those in *Millward*, where the court enforced a two year and citywide non-compete clause against a camp instructor who breached his employment contract and started his own competing summer camp. *Id.* The court upheld the non-compete against the camp instructor because he had developed close personal relationships with students who were potential campers, their parents, and others in the field, even though there was no proof that he had directly solicited the campers of his prior employer. *Id.* The instructor "became known in the competitive field of day camp operations and established contacts that were essential if the new camp was to succeed." *Id.* The lower court reasoned that the former camp counselor would impermissibly use his former employer's goodwill and client contacts where

> you have a summer camp that draws the same age group of child from the same general location and you locate that camp right near the other camp, that there is a strong showing, there is a great probability, far more than just a reasonable probability, that the competing camp will injure the first camp, particularly that is true when you look at the brochure that the (appellant) uses and compare it with the Gerstung [the former employer] brochure. When you look at a map to show how you get there it looks like you're talking about the same camp.

*Millward*, 302 A.2d at 16.

The facts in this case present an even stronger probability that Mr. Jezewski's learning center will injure the Sylvan franchise.[4] Sylvan has produced ample evidence that the former Sylvan Learning Center was synonymous with educational services in Dothan and that it was the goodwill of the Sylvan franchise that allowed Mr. Jezewski and GCE to transition to independent operations after January 15, 2010. This conclusion is amply supported by the evidence at the hearing. Mr. Jezewski was the franchisee of the only Sylvan Learning Center in Dothan Alabama, a position he had held since April 1992. He had access to Sylvan's confidential operations manual during those eighteen years. He also used Sylvan's diagnostic testing system, and entered those results into Sylvan's Educational Operating System to determine lesson plans for students. He had intimate knowledge of how to operate a Sylvan Learning Center, and continued to use the Sylvan method and products after termination of the agreement. Mr. Jezewski had continued contact with former Sylvan clients after the License Agreement was terminated on January 15, 2010. In fact, after Sylvan's termination of the License Agreement, he continued to operate GCE in the same store location, under the same sign, with the same logos, using the same telephone number, method of operation, and materials as he had operated the Sylvan Learning Center from April 1992 until January 15, 2010. In sum, Mr. Jezewski continued to use Sylvan's goodwill,

---

[4] In *Millward*, "[a]n important factor . . . which dictate[d] [its] decision [was] the uniqueness of Millward's reputation and qualifications which had a direct bearing on the services he rendered for the appellee. It was because of this uniqueness he was first hired and his attributes and accomplishments were widely publicized and emphasized by [his former employer]." 302 A.2d at 17. Though there is no evidence that Mr. Jezewski's reputation and qualifications are as unique in this situation, Mr. Jezewski's intimate knowledge of the Sylvan method of operation makes the services he provides no less unique than those of Mr. Millward.

method of operation, and client list to operate his own independent learning center after the termination.

It is the potential for diversion of Sylvan's business to former franchisees and the resulting harm to the national Sylvan franchise network that justifies enforcing the non-compete agreement, even though there is no other Sylvan Learning Center in the Dothan area. Mr. Jezewski was able to build his franchise using Sylvan's brand, advertising, method of operation, and goodwill. *See Jiffy Lube Int'l, Inc. v. Weiss Bros., Inc.*, 834 F. Supp. 683, 691 (D.N.J. 1993) ("One can view a franchise agreement, in part, as a conveyance of the franchisor's good will to the franchisee for the length of the franchise. When the franchise terminates, the good will is, metaphysically, reconveyed to the franchisor. A restrictive covenant, reasonably crafted, is necessary to protect the good will after that reconveyance."). Once the License Agreement was terminated, the goodwill and customer relationships belonged to Sylvan, not to Defendants.

A Maryland District Court applying Maryland law also noted the danger to a franchisor's network created by "breakaway" franchises continuing to operate in violation of a non-compete agreement. *ATL Int'l, Inc. v. Baradar*, Bus. Franchise Guide (CCH) ¶ 11,345 (D. Md. 1997) (oral ruling, not officially reported) (finding irreparable harm if a "breakaway" franchisee were allowed to continue operating in violation of a non-compete clause, because it would send a "clear signal" to other disgruntled franchisees and might unravel the franchise system). Because Mr. Jezewski's business operation is so intertwined with the Sylvan franchise, the non-compete agreement is justifiable and reasonably necessary

to protect Sylvan's goodwill, business opportunities in Dothan, franchise network, and for "protection against diversion of [its] business to the former employee who has had personal contacts with customers which the employer lacks." *Tuttle*, 246 A.2d at 590.

### c. No Undue Hardship on the Employee or Disregard of the Interests of the Public

"Even though the employer has a legitimate interest in the protection of its clientele, the restrictive covenant will not be enforced if under all the circumstances the covenant is unduly restrictive of the employee's freedom." *Ruhl*, 225 A.2d at 293. "[T]he right to labor or use one's skill, talents, or experience for one's own benefit, or furnish them to another for compensation, is a natural and inherent right of the individual." *Deuerling v. City Baking Co.,* 141 A. 542, 543 (Md. 1928).

A careful reading of the language of the non-compete agreement reveals that it does not impose any undue hardship on Mr. Jezewski. The non-compete agreement restricts his ability, for two years and twenty miles, to "engage as an owner, operator, or in any managerial capacity, in any educational business offering individualized diagnostic tests or academic or prescriptive educational programs which are designed to be personally taught, supervised or administered by trained instructors." (Prelim. Inj. Hr'g, Ex. 1 ¶ 11.5.2.)

The following examples of Mr. Jezewski's employment options illustrate the lack of hardship imposed by the agreement. First, Mr. Jezewski could move GCE outside of the twenty-mile radius of his current location and immediately resume operation of his

independent learning center.[5]  Second, as Sylvan's general counsel admitted, "[g]oing to a school to teach" would not be a violation by Mr. Jezewski.  (Prelim. Inj. Hr'g 130.)  In fact, the License Agreement explicitly provides that "Paragraph 11.5 shall not prevent any person affiliated with Licensee from accepting employment in any Center or school which is licensed by state governmental authorities to provide a curriculum required by law, as an instructor in an established course of instruction previously offered at that Center or school."  (Prelim. Inj. Hr'g, Ex. 1 ¶ 11.5.3.)

Third, employment as an instructor or non-managerial employee at Prometric or any other learning center would not violate the non-compete.  The language of the non-compete restricts the Licensee engaging as an "owner, operator, or in any managerial capacity, in any educational business," but places no restriction on working as a non-managerial employee or instructor at any educational business, learning center, or school.  (Prelim. Inj. Hr'g, Ex. 1 ¶ 11.5.2.)  In defining "operator" in an organizational context under CERCLA, the Supreme Court noted that the word ordinarily means "to conduct the affairs of; manage: *operate a business*," and "to manage."  *United States v. Bestfoods*, 524 U.S. 51, 66 (1998) (citing American Heritage Dictionary 1268 (3d ed. 1992); Webster's New International Dictionary 1707 (2d ed. 1958)).  The court adopts a similar interpretation of the term "operator" in construing this contract.  The non-compete is interpreted, therefore, to limit Mr. Jezewski's employment in managerial and ownership roles in educational businesses, but not

---

[5] Defendants may immediately resume operations outside the twenty-mile radius so long as Sylvan's trademarks and proprietary information are not infringed.

to positions as an instructor or non-managerial employee. Finally, Mr. Jezewski remains free to pursue any other employment within the two-year and twenty-mile restriction that does not pertain to "any educational business offering individualized diagnostic tests or academic or prescriptive educational programs which are designed to be personally taught, supervised or administered by trained instructors." (Prelim. Inj. Hr'g, Ex. 1 ¶ 11.5.2.) Though the court recognizes the personal hardship that Mr. Jezewski will endure under the non-compete, that hardship is not undue given his various remaining employment opportunities.

Finally, the court must address whether the non-compete clause would disregard the interests of the public. Although the public has a strong interest in childhood education, the testimony of both parties demonstrates that, in view of other educational options available to children and parents, the non-compete is not injurious to the public interest. First, there was testimony that, during the past decade, the government's No Child Left Behind program has displaced Sylvan in providing after-school educational services. Mr. Schroeder admitted that it "has become evident in the last eight or nine years with No Child Left Behind where Sylvan, has unfortunately, declined as a business. And one of the reasons is that schools provide a lot of the services that Sylvan provides, not in the same way, not diagnostic/prescriptive, but in a similar way." (Prelim. Inj. Hr'g 101.) In addition, Mr. Jezewski said that after termination of the License Agreement, GCE's business was "probably off about 45 percent." (Prelim. Inj. Hr'g 77.) With those data points in mind, there is no evidence that the Dothan area demand for childhood education suddenly and precipitously dropped by nearly half this year. Therefore, the public's demand for childhood

education has been readily supplied by other competitors and market entrants in the Dothan area, whether schools, private tutors, other learning centers, or simply parents sitting down with their children after school.  As a result, enforcing the non-compete against Defendants will not disregard the public's interest in childhood education.

### *3.    Summary*

After weighing the factors governing enforceability of a non-compete agreement under Maryland law, the court finds that License Agreement paragraph 11.5.2 is reasonable and enforceable against Defendants.  Satisfied of the enforceability of the non-compete agreement under Maryland law, the court reiterates its findings in open court that there is a substantial likelihood of success on the merits.  (Prelim. Inj. Hr'g.)

### B.    **The Other Preliminary Injunction Elements**

As pronounced in open court, the court also finds that the threatened injury to the movant outweighs any damage the imposed injunction may cause the opposing party, and that the injunction would not be adverse to the public interests.  Therefore, Sylvan's motion for preliminary injunction is due to be granted according to the terms of License Agreement paragraph 11.5.2.  (Prelim. Inj. Hr'g; Prelim. Inj. Hr'g, Ex. 1 ¶ 11.5.2.)

### C.    **Scope of the Preliminary Injunction**

Sylvan seeks to enjoin Defendants from "engaging in or carrying on a competitive business within a 20 mile radius of their former Sylvan learning franchise."  (Doc. # 3, ¶ 2.) The scope of employment this language seeks to prohibit is far broader than what the parties contracted for in the License Agreement, and the court will not grant the preliminary

injunction under Sylvan's requested terms. Accordingly, Defendants are preliminarily enjoined from competing according to the language of the License Agreement paragraph 11.5.2

> Licensee covenants, for a period of two (2) years after such termination, expiration, nonrenewal, transfer or assignment not to engage as an owner, operator, or in any managerial capacity, in any educational business offering individualized diagnostic tests or academic or prescriptive educational programs which are designed to be personally taught, supervised or administered by trained instructors, at or within a twenty (20) mile radius of any Sylvan System Center in operation on the Effective Date hereof other than as an authorized licensee of another Sylvan unit.

(Prelim. Inj. Hr'g, Ex. 1 ¶ 11.5.2.)

## V.  CONCLUSION

Upon consideration of the evidence presented during the hearing on Plaintiff's motion for preliminary injunction (Doc. # 3), the court finds that Plaintiff has satisfied the requirements for preliminary injunctive relief. Fed. R. Civ. P. 65; *see Am. Civil Liberties Union of Fla.*, 557 F.3d at 1198. Accordingly, it is ORDERED that Plaintiff's Motion for Preliminary Injunction is GRANTED according to the terms of License Agreement paragraph 11.5.2. Pursuant to 15 U.S.C. § 1116, Defendants are ORDERED to file with the court and serve on Plaintiff on or before **November 3, 2010**, a written report, under oath

setting forth in detail the manner and form in which Defendants have complied with the preliminary injunction.

DONE this 6th day of October, 2010.

>  /s/ W. Keith Watkins  
> UNITED STATES DISTRICT JUDGE